IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER R. HECKER, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 21-CV-2701 |
| : | |
| CENTRAL INTELLIGENCE AGENCY, : | |
| *et al.*, : | |
|     Defendants. : | |

<u>**MEMORANDUM**</u>

**TUCKER, J.**                                                                                                          **JANUARY 20, 2022**

This matter comes before the Court by way of a Complaint (ECF No. 2), brought by Plaintiff Christopher R. Hecker, proceeding *pro se*. By Order dated October 12, 2021, the Court previously determined that Hecker was not able to afford to pay the filing fee in this action and granted him leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, and noted that the Complaint was still subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court has now conducted the required screening. For the following reasons, Hecker's Complaint will be dismissed in accordance with Federal Rule of Civil Procedure 8 and pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) as frivolous and for failure to state a claim. Hecker will be granted leave to file an amended complaint on a limited number of claims.

**I.      FACTUAL ALLEGATIONS**[1]

Hecker, a prisoner currently confined at State Correctional Institution – Phoenix ("SCI Phoenix"),[2] brings this case pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Federal*

---

[1] The facts set forth in this Memorandum are taken from Hecker's Complaint (ECF No. 2).

[2] A review of public records shows that in 2015 a jury convicted Hecker on eleven counts of making terroristic threats, eleven counts of harassment, and one count of stalking in connection

*Narcotics Agents*, 403 U.S. 388 (1971).³  (ECF No. 2 at 2, 4.)⁴  Hecker names over 40 Defendants in this action including the Central Intelligence Agency ; the Department of Homeland Security ("DHS"); Katy Perry, a "singer/artist"; Jimmy Kimmel, the late-night "talk show host"; Ryan Reynolds, the "actor/entrepreneur"; Dave Grohl, the lead singer for the Foo Fighters; the Republican National Committee and its executives and directors; and the Democratic National Committee and its executives and directors.  (*Id.* at 2-4, 7.)  Hecker also names SCI Phoenix and approximately 19 other Defendants who all appear to be employees at SCI Phoenix including, but not limited to multiple corrections officers, hearing officers, nurses, nurse practitioners, physicians' assistants, and grievance coordinators, in addition to several John Does employed at SCI Phoenix in a variety of different capacities.  (*Id.* at 4-6.)  Hecker also names several corrections officers from Centre County Correctional Facility, where he was

---

with a series of emails and phone calls he placed to his ex-wife at her home and office in 2014. *See Commonwealth v. Hecker*, No. 2093 MDA 2015, 2016 WL 7468164, at *1 (Pa. Super. Ct. Dec. 28, 2016).  Hecker was sentenced in the Court of Common Pleas of Centre County to twelve to twenty-four years' incarceration, to be followed by four years' probation. *Id.* Following his initial conviction, Hecker was also convicted of aggravated harassment by a prisoner for spitting a mouthful of water on a corrections officer.  He received an additional sentence of one to two years' incarceration. *See Commonwealth v. Hecker*, 153 A.3d 1005, 1006 (Pa. Super. Ct. 2016).  Because he punched the prison guard who served him the water in a separate, unrelated incident, he was also convicted of one count of aggravated assault of a prison guard, one count of simple assault, and one count of summary harassment and sentenced to three to twelve months' incarceration. *See Commonwealth v. Hecker*, No. 23 MDA 2016, 2016 WL 7468178, at *1-*2 (Pa. Super. Ct. Dec. 28, 2016).  Both of these incidents occurred while Hecker was house at the Centre County Correctional Facility in late 2014 and early 2015 awaiting trial on the initial charges he faced. *See Hecker*, 153 A.3d at 1006; *Hecker*, 2016 WL 7468178, *1.

³ "[A]ctions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'" *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

⁴ The Court uses the pagination assigned to the Complaint by the CM/ECF docketing system.

previously incarcerated, along with a number of individuals who he asserts are "CIA operatives", and multiple "John Doe" Corporations. (*Id.* at 5-7.)

Hecker's handwritten Complaint is approximately 48 pages and difficult to summarize in a succinct and clear way. Hecker attempts to assert claims arising out of an intricate, and at times, convoluted, series of events that, according to Hecker, sound in a broad-based, wide-ranging "plot" orchestrated primarily by the CIA and various individuals working as CIA operatives (or at the behest of the CIA) designed to target Hecker because he is allegedly a beneficiary of the will of King Henry VIII. (*See generally id.* at 9-12, 15, 18, 20-24, 27-29, 31-33, 40); (*see, e.g., id.* at 22) ("The design of the C.I.A. to use the aforementioned inheritance of King Henry VIII, left for myself as a condition of his will, to incent people near me to frustrate the conditions of my claim to that will. This plot of the C.I.A. has been an effective tool at incenting [sic] an entire underground movement.") This plot against him allegedly began before he was born and has been impacting him his entire life. (*Id.* at 9, 18); (*see id.* at 18) ("my being spied on . . . throughout my 50 years of life"). Hecker attributes a variety of events in his life to this CIA plot both from before he was incarcerated and since his incarceration at SCI Phoenix. Hecker claims that the CIA monitors what he watches and hears and monitors "biometrics about [his] person[.]" (*Id.* at 18.) Hecker alleges that he has suffered psychological abuses "as coordinated by [his] being spied on both, throughout [his] 50 years of life and as [he] [is] currently active in [his] prison cell." (*Id.*)

The allegations of the Complaint repeatedly transition between long-winded, incoherent ramblings, about this alleged CIA plot and other irrational, incredible assertions, and comprehensible allegations about the conditions of his confinement at SCI Phoenix. With this in mind, in screening the Complaint the Court will focus on the intelligible allegations in the

Complaint that may hint at potential legal claims Hecker seeks to assert. The Court will elide over those that lacks an arguable basis either in law or in fact. To that end, as best as the Court can discern, Hecker alleges that on or about April 8, 2021, he was attacked by two other inmates who "bludgeoned Hecker while the CO on duty [Defendant M. Barrow] can be seen doing nothing to assist." (*Id.* at 11.) Hecker claims that Barrow failed to protect him from this attack. (*Id.*) According to Hecker, he asked Barrow "to unlock his door" and instead of unlocking the door, Barrow "elected to go to the table [where] Hecker's two assailents [sic] were sitting . . . to instigate Hecker . . . and show preference to the assailents [sic]." (*Id.*) Hecker alleges that "aggravation escalated" at that point. (*Id.*) Hecker contends that "[d]espite . . . the . . . failure to protect being blatantly obvious, [Defendant] Yodis [(a hearing examiner)] chose to uphold the misconduct and penalize . . . Hecker." (*Id.* at 5, 11.)

Hecker further asserts that the injuries he sustained in that attack caused him to call for emergency treatment during the overnight hours of April 8th and April 9th. (*Id.* at 12.) He claims that several unnamed correctional officers and Defendant "Nurse Jane Doe 2" arrived at his cell, seated him in a wheelchair, and took him to an exam room. (*Id.*) Hecker claims that he had an eyebrow wound, dizziness, nausea, and knee pain. (*Id.*) He alleges that Nurse Jane Doe 2 examined his eyebrow wound and used a "pen light" to examine his eyes, but that she treated him with "deliberate indifference and hate" and "denied him adequate medical treatment." (*Id.*) Hecker claims that his symptoms "indicated a significant head trauma" and that he requested x-rays, but his request for treatment at an outside hospital was denied. (*Id.*) Since his examination, Hecker alleges that he has "discovered bones broken across the right side of his face" and has an "enduring knee injury." (*Id.* at 14.) Hecker also alleges that Defendant Lt. John Doe was present during this examination and that he also failed to protect him because "despite witnessing

Nurse Doe 2's denials," Lt. John Doe "did nothing to overrule or even advocate for adequate treatment" for Hecker. (*Id.*) Following his examination by Nurse Jane Doe 2, Hecker alleges that he was seen by Defendant Nurse DiFrancesco on the morning of April 9, 2021. (*Id.*) When Nurse DiFrancesco arrived to check on him, Hecker asserts that he "could not ambulate safely" and asked for a wheelchair to avoid collapsing. (*Id.*) Hecker claims that Nurse DiFrancesco "refused" to get him a wheelchair and told him, "'You can do it,' and went to wait in [an] exam room." (*Id.*)

More broadly, Hecker also alleges that he has not received adequate medical assistance and treatment since he arrived at SCI Phoenix in June of 2019. (*Id.* at 17.) He claims that all of these instances of inadequate medical care "stem from two, unrelated medical conditions," and that the individuals involved included Defendants P.A. Joe Walsh, Nurse DiFrancesco, Nurse "Paula", and Senior Medical Supervisor Dr. Bainbridge, although he does not specify the nature of the medical conditions or how his treatment has been inadequate. (*Id.*) Somewhat relatedly, Hecker also makes allegations regarding certain skin issues. Specifically, he alleges that "at times there are para[s]ite insects or bugs of some sort in [his] prison cell" which "burrow into [his] skin, lay eggs and abscess, eventually causing cysts & sores which scar [his] skin." (*Id.* at 19.) He also claims that he was "wrongly assessed and biopsied due to a chemical burn" which he believes was the result of "intentional exposure to the irritant &/or burn agent." (*Id.* at 21-22.)

In a seemingly unrelated series of events, Hecker also alleges that he is being "poisoned by prison staff regularly." (*Id.* at 15.) He claims that the items used to poison him "have included bodily fluids such as urine, feces and semen" as well as a "viscous (oily) substance" that he believes is a pesticide. (*Id.*) With respect to his dietary needs, Hecker alleges in a single, conclusory sentence that his "[a]pproved diet [was] denied" in violation of the Eighth

Amendment.  (*Id.* at 21.)  Hecker also asserts that "each time [he] go[es] to the hole, personal effects of [his] . . . are stolen." (*Id.* at 20.)  Finally, Hecker alleges that on an unspecified occasion during his confinement at SCI Phoenix, Correctional Officer Jaynes "physically assaulted" Hecker. (*Id.* at 19.)  Hecker claims that while Jaynes was restraining him by "using a lanyard attached to [Hecker's] cuffs," Jaynes "deliberately wrenched [Hecker's] arms, twisting left & right, to cut at [his] wrists" resulting in "numerous abrasive lacerations caused by Jaynes's wanton, retributive abuse of force." (*Id.* at 19-20.)  Hecker seek money damages of "$100s of billions." (*Id.* at 39.)

## II.  STANDARD OF REVIEW

The Court previously granted Hecker leave to proceed *in forma pauperis* because it appeared that he was incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it is frivolous or fails to state a claim.  Pursuant to § 1915(e)(2)(B)(i), a complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.*  Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless[,]" including claims that describe "fantastic or delusional scenarios[.]" *Id.* at 327.  "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible[.]" *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),

*see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). In assessing whether a complaint states a claim, "[a]t this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As McCracken is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

On a more fundamental level, however, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief. *See Travaline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011). The United States Court of Appeals for the Third Circuit has explained that in determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). A pleading may still satisfy the "plain" statement requirement "even if it is vague, repetitious, or contains extraneous information" and "even if it does not include every name, date, and location of the incidents at issue." *Id.* at 93-94. The important consideration for the

Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

However, "a pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* at 93; *see also Fabian v. St. Mary's Med. Ctr.*, Civ. A. No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) ("Federal Rule of Civil Procedure 8 requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue.") (quotations omitted). Dismissals under Rule 8 are "'reserved for those cases in which the complaint so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Garrett*, 938 F.3d at 94 (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

### III.    DISCUSSION

####    A.    Hecker's Complaint Does Not Comply with Rule 8

Hecker's Complaint does not contain a short and plain statement explaining why he is entitled to relief.[5] Much of the Complaint appears to constitute impertinent, incredible,

---

[5] The Court notes that the fundamental nature of Hecker's Complaint makes it difficult to accurately discern the full scope of his claims. Hecker's Complaint is best described as a "kitchen sink" complaint, that is, one seeking to bring "every conceivable claim against every conceivable defendant." *See Talley v. Harper*, Civ. A. No. 14-1411, 2017 WL 413069, at *2 (W.D. Pa. Jan. 31, 2017). Hecker himself admits that this "case is a 'can of worms'" and that this "filing is a can opener" such that further investigation of his claims "will resolve/expose many more colorable individuals & entities." (ECF No. 2 at 35.) This raises significant Rule 8 concerns:

> Courts have repeatedly criticized the filing of "kitchen-sink" or "shotgun" complaints — complaints in which a plaintiff brings every conceivable claim against every conceivable defendant. Such complaints are troublesome for many reasons. For one thing, complaints like [that] . . . unfairly burden defendants and courts. The plaintiff who files such a shotgun complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of

and delusional material that is irrelevant to any potential claims Hecker seeks to allege. To the extent there is "a genuine dispute that supports a viable legal claim" underlying Hecker's Complaint, that "genuine dispute" is "almost impossible to discern" because it is "buried in pages of various allegations" regarding a long standing, far reaching CIA plot. *See Talley*, 2017 WL 413069, at *2. The kitchen-sink nature of Hecker's Complaint violates Rule 8 because Hecker does not identify discrete defendants and discrete actions taken by them, and the Complaint fails to present cognizable legal claims to which a defendant could respond on the merits. *See Garrett*, 938 F.3d at 93-94. Dismissal of Hecker's Complaint under Rule 8 is warranted here because this is one of rare instances where "the complaint [is] so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Id.* at 94.

    **B.**    **Hecker's Frivolous Claims are Dismissed**

In drafting his Complaint, Hecker checked the boxes on the form indicating that he seeks to bring this matter as a civil rights case raising constitutional claims pursuant to 42

---

those claims might have legal support. This is not the job of either a defendant or the Court. It is the plaintiff's burden under Rule 8 to reasonably investigate his claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them.
    It is important to note that a "kitchen-sink" or "shotgun" complaint also harms the plaintiff who brings it. In most cases, a genuine dispute that supports a viable legal claim underlies a plaintiff's complaint. But this genuine dispute becomes almost impossible to discern when it is buried in pages of various allegations, some of which may not rise to the level of a constitutional claim.

*See Talley*, 2017 WL 413069, at *2. The problematic aspects of a "kitchen-sink" complaint such as Hecker's are readily apparent here as the Court has expended significant time to sort through the "can of worms" Hecker opened with this "can opener" filing.

U.S.C. § 1983 and *Bivens*.[6] (*See* ECF No. 2 at 4.) Hecker's allegations that he is the target of a long-term, wide-ranging plot orchestrated primarily by the CIA and various individuals working as CIA operatives (or at the behest of the CIA) because Hecker is allegedly a beneficiary of the will of King Henry VIII resulting in him being spied on and monitored both inside and outside of prison "rise to the level of the irrational or the wholly incredible[,]" *see Denton*, 504 U.S. at 32, and must be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) because they lack a basis in fact.

Federal courts routinely dismiss allegations that the CIA, FBI, NSA, and other governmental agencies or officials are targeting individual citizens with the intention to track, surveil, monitor, attack, or torture these individuals with directed energy weapons, microwave radiation, satellite technology, and the like as factually frivolous under § 1915, finding that these allegations are fanciful, fantastic, delusional, irrational, or wholly incredible. *See, e.g.*, *McGinnis v. Freudenthal,* 426 F. App'x 625, 628 (10th Cir. 2011) ("Mr. McGinnis' claims of electromagnetic torture [by government and prison officials] are delusional and unsupported by any factual basis. The district court did not abuse its discretion in dismissing these claims as frivolous."); *Price v. Fed. Bureau of Investigation*, Civ. A. No. 20-3015, 2020 WL 4368063, at *3 (E.D. Pa. July 30, 2020), *aff'd*, 845 F. App'x 106 (3d Cir. 2021) (finding plaintiff's allegations to be factually frivolous where plaintiff asserted that "numerous law enforcement agencies, attorneys, prison officials, and medical professionals have used neurological and psychological technology to control the 'four basic groups of his brain and mental functions'" and "that the use of this 'technology' and 'mind

---

[6] To the extent Hecker mentions claims under the Americans with Disabilities Act, the Prison Rape Elimination Act, and for various privacy rights (*see* ECF No. 2 at 4), the Court finds there are no factual allegations contained in the Complaint to support these claims.

control' has caused him numerous impairments and drove him to criminal and erratic behavior"); *Brown v. United States*, Civ. A. No. 19-154, 2019 WL 3753193, at *2-*5 (E.D.N.C. May 10, 2019), *report and recommendation adopted*, 2019 WL 3783271 (E.D.N.C. Aug. 12, 2019) (dismissing *pro se* plaintiff's claims that the "United States is attacking him with satellite directed energy weapons" pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) because it lacked an arguable basis in fact and rose to the level of the irrational or the wholly incredible); *Rhodes v. Fed. Bureau of Investigation*, Civ. A. No. 16-0093, 2017 WL 1021314, at *4 (N.D. Ind. Mar. 16, 2017) ("the remainder of Rhodes' complaint, which references unspecified actions allegedly taken by unidentified FBI agents related to harassment, torture (using 'directed energy weapons'), theft, destruction of property, defamation, civil rights violations, attempted murder ('by forced suicide'), and misconduct, suggests that any FOIA claims regarding these allegations are frivolous because "the facts alleged rise to the level of the irrational or wholly incredible."); *cf. Terry v. United States*, 2014 WL 5106984, *1-2 (C.D. Cal. 2014) (allegations in paid complaint that NSA and others were using directed energy weapons to send voices into plaintiff's head were "frivolous, delusional and fanciful" and did not confer subject matter jurisdiction on the court).

      Most of Hecker's allegations are delusional, irrational, wholly incredible, and therefore lack a factual basis.[7]  Accordingly, the majority of the Complaint will be

---

[7] Hecker's Complaint is also defective for another reason.  Assuming *Bivens* applies in this context, sovereign immunity bars Hecker's civil rights claims against Defendants the CIA and DHS.  *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Treasurer of New Jersey v. United States Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012) ("Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities.").

dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), except as set forth in more detail below.  Hecker will not be granted leave to amend these claims as amendment would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

  **C.**  **Hecker's Potential Claims Under § 1983**

  The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[8]  *West v. Atkins*, 487 U.S. 42, 48 (1988).

  In the more lucid parts of Hecker's Complaint, he asserts several potential constitutional violations, including, but not limited to the following:  (1) a First Amendment access to the

---

[8] Hecker names several correctional officers from Centre County Correctional Facility as Defendants in this action.  However, the Complaint does not allege that these Defendants had any personal involvement in the allege violation of Hecker's constitutional rights while he was incarcerated at SCI Phoenix.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Because he has not allege sufficient facts to demonstrate that these Defendants were personally involved, the Court will dismiss Hecker's § 1983 claims against them without prejudice.

courts claim;[9] (2) an Eighth Amendment claim for excessive force;[10] (3) Eighth Amendment claims for deliberate indifference related to his medical treatment;[11] and (4) Eighth Amendment

---

[9] Hecker repeatedly asserts in a conclusory fashion that his right to access the courts was interfered with by several prison officials at SCI Phoenix, apparently at the behest of the CIA. The details of this interference, however, are unclear. For example, Hecker alleges that "correctional staff . . . operating under color of law . . . are deliberately interfering with my 6th Amendment right to access the courts by methods coordinating with intelligence monitors . . . to deliver mentally abusive suggestions outside of and throughout the surroundings of my prison cell[.]" (*See* ECF No. 2 at 10); (*see also id.* at 11) ("The officer speaking to [another inmate] . . . meant to frustrate my 6th Amendment right to access by way delivering . . . [a] frustrating conversation. The plot to do so was coordinated and directed by intelligence spies who spy on the contends of my cell. Repeated suggestion[s] have made clear that CIA's disdain for my intent to file a complaint in court. Obstruction is their aim."); (*see id.* at 17-18) ("I am housed in disciplinary custody, where getting access to my legal papers has been made unreasonably difficult and would require my availing myself to repeated events of abuse . . . This interference with my 6th Amendment right is deliberate and meant as a form of sexual harassment[.]")

While Hecker references the Sixth Amendment in this context, the Court construes any potential claim as arising under the First Amendment. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.* Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

Hecker's conclusory allegations are insufficient to set forth a plausible access to the courts claim as currently plead. However, in an abundance of caution, liberally construing the Complaint and cognizant of Hecker's *pro se* status, the Court recognizes that an opportunity to amend is necessary here to "flesh out" Hecker's allegations by giving him an opportunity to explain "the 'who, what, where, when and why' of [his] claim." *See Gambrell v. S. Brunswick Bd. of Educ.*, Civ. A. No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019).

[10] Hecker alleges that Defendant Correctional Officer Jaynes "physically assaulted" Hecker. (ECF No. 2 at 19.) Hecker claims that while Jaynes was restraining him by "using a lanyard attached to [Hecker's] cuffs," Jaynes "deliberately wrenched [Hecker's] arms, twisting left &

right, to cut at [his] wrists" resulting in "numerous abrasive lacerations caused by Jaynes's wanton, retributive abuse of force." (*Id.* at 19-20.) The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the prisoner has alleged plausibly that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, Civ. A. No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7). The factors used to determine whether the force applied was excessive include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force." *Id.* at 104. Thus, the inquiry must be driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries. *Id*. at 108; *see also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002). The Eighth Amendment does not protect against a *de minimis* use of physical force, so long as it is not of a sort "repugnant to the conscience of mankind." *Brooks*, 204 F.3d at 107 (quoting *Hudson*, 503 U .S. at 9-10).

If Hecker seeks to pursue and Eighth Amendment claim for excessive force against Jaynes, he may do so by naming him as a defendant in the amended complaint and setting forth his allegations against Jaynes in as much detail as possible, including but not limited to the date, time, and location of this incident.

[11] Many of Hecker's allegations appear to assert potential claims related to his medical care. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

claims regarding the conditions of his confinement[12] potentially with respect to the denial of his approved diet, poisoning of his food, and failure to protect him from violence by other inmates.

Hecker's Complaint, however, fails to allege sufficient facts to state a plausible claim for any of these potential constitutional violations and they must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Many of his non-frivolous allegations are conclusory. For example, he alleges that Nurse Jane Doe 2 examined his eyebrow wound and used a "pen light" to examine

---

[12] The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)). To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement."). Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). A prisoner must also establish that the defendants acted with deliberate indifference. *Farmer*, 511 U.S. at 835. A claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.").

his eyes, but that she treated him with "deliberate indifference and hate" and "denied him adequate medical treatment." (ECF No. 2 at 12.) This type of conclusory allegation is insufficient to allege a plausible claim. *Iqbal*, 556 U.S. at 678. The dismissal of these claims is without prejudice, and the Court will grant Hecker leave to amend with respect to these specific claims.[13] Cognizant of Hecker's *pro se* status, the Court will grant him an opportunity to "flesh out [his] allegations by . . . explaining in [an] amended complaint the 'who, what, where, when and why' of [his] claim." *See Overby v. Steele*, Civ. A. No. 21-5030, 2021 WL 6137026, at *5 (E.D. Pa. Dec. 29, 2021); *Gambrell v. S. Brunswick Bd. of Educ.*, Civ. A. No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019) Hecker is put on notice that any amended complaint he may file shall not contain the same type of factually frivolous claims the Court has already dismissed above with respect to this contention that there is a CIA plot targeting and monitoring him.

## IV.   CONCLUSION

For the foregoing reasons, Hecker's Complaint will be dismissed in accordance with Federal Rule of Civil Procedure 8 and pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) as

---

[13] While the Court will permit Hecker to amend his Eighth Amendment deliberate indifference claims related to his medical care, the Court will dismiss any such claims against Defendant Lt. John Doe and against any other non-medical prison officials with prejudice. "If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill*, 372 F.3d at 236; *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (per curiam) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Hecker alleges that Defendant Lt. John Doe "did nothing to overrule or even advocate" for Hecker when he was being treated by a nurse. (*See* ECF No. 2 at 14.) Since Doe is not a medical provider and Hecker was being treated by a medical provider, Hecker cannot state a plausible deliberate indifference claims against him and dismissal with prejudice is warranted. If Hecker chooses to bring claims in his amended complaint for deliberate indifference to his medical needs, he should note the distinction between medical providers and non-medical providers.

frivolous and for failure to state a claim.  Hecker's claims regarding a governmental plot to target and monitor him will be dismissed with prejudice as frivolous pursuant to § 1915(e)(2)(B)(i).  Hecker's remaining claims brought pursuant to § 1983 will be dismissed without prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim.  Hecker will be granted leave to file an amended complaint on the following narrow claims:  (1) a First Amendment access to the courts claim; (2) an Eighth Amendment claim for excessive force; (3) Eighth Amendment claims for deliberate indifference related to his medical treatment; and (4) Eighth Amendment claims regarding the conditions of his confinement.  An appropriate Order follows.

**BY THE COURT:**

/s/Petrese B. Tucker

_____
**PETRESE B. TUCKER, J.**